**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STEVEN ANTHONY SANCHEZ, *on behalf of*
*Himself and others similarly situated*,

        Plaintiff,

    v.

HERSHA HOSPITALITY TRUST,
HERSHA HOSPITALITY MANAGEMENT, L.P.,
and DEMETRIUS HODGE

        Defendants.

---

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff STEVEN ANTHONY SANCHEZ ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, brings this Class Action Complaint against Defendants HERSHA HOSPITALITY TRUST, HERSHA HOSPITALITY MANAGEMENT, L.P. (together, "Hersha" or "Corporate Defendants"), and DEMETRIUS HODGE ("Individual Defendant," collectively with Corporate Defendants, "Defendants") and alleges as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This action seeks to bring a stop to, and to obtain redress for, those harmed by

Defendants' unlawful and discriminatory criminal history screening policies and practices, which have been used to deny employment opportunities to otherwise qualified job applicants.

2.       Plaintiff brings this lawsuit on behalf of himself and all others similarly situated against Defendants for willful and/or negligent violations of (1) the New York City Human Rights Law ("NYCHRL"), as amended by the Fair Chance Act, N.Y.C. Admin. Code § 8-101 *et seq.*, and (2) the New York Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*

## JURISDICTION AND VENUE

3.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

4.       The Court has personal jurisdiction over Defendants because Defendants do business in New York and because the acts and omissions giving rise to this Complaint took place in New York.

5.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

*Plaintiff Steven Anthony Sanchez*

6.       Plaintiff Sanchez is a citizen of New York and a resident of Bronx County.

***Defendants***

7.      Corporate Defendant Hersha Hospitality Trust describes itself as "a self-advised real estate investment trust in the hospitality sector, which owns and operates high-quality hotels in urban gateway markets and regional resort destinations." Hersha Hospitality Trust owns the following sixteen (16) hotels in New York City, either wholly or as part of a joint venture:

(a)  Hyatt Union Square

(b)  Duane Street Hotel

(c)  Hilton Garden Inn Manhattan Midtown East

(d)  Hilton Garden Hotel TriBeCa

(e)  Hampton Inn Seaport

(f)  Holiday Inn Express Chelsea

(g)  Hilton Garden Inn JFK

(h)  Gate Hotel JFK Airport

(i)  Nu Hotel, Brooklyn

(j)  Hampton Inn Manhattan/Times Square South

(k)  Hampton Inn Manhattan – Chelsea

(l)  Hampton Inn Manhattan – Madison Square Garden

(m) Holiday Inn New York City – Wall Street

(n)  Holiday Inn Express New York City Times Square

(o)  Holiday Inn Express Wall Street

(p)  Candlewood Suites New York City – Times Square


8.      As explained below. Hersha Hospitality Trust ordered a consumer report on Plaintiff and signed the letter rescinding Plaintiff's offer of employment on the basis of that report. *See* **Exhibit A**.

9.    Hersha Hospitality Trust is organized under the laws of the State of Maryland and has principal places of business at 510 Walnut Street, 9th Floor, Philadelphia, PA 19106, and 44 Hersha Drive, Harrisburg, PA 17102.

10.    Hersha Hospitality Management, LP is a hotel management company that operates most of the hotels owned by Hersha Hospitality Trust and also some hotels that Hersha Hospitality Trust does not own. Hersha Hospitality Management operates the following fifteen (15) hotels in New York City:

(a) Hyatt Union Square

(b) Nu Hotel, Brooklyn

(c) Moxy NYC Downtown

(d) Holiday Inn New York City – Wall Street

(e) Holiday Inn Express New York City Times Square

(f) Hilton Garden Inn JFK

(g) Hilton Garden Inn New York/Central Park South-Midtown West

(h) Hilton Garden Inn Manhattan Midtown East

(i) Aliz Hotel Times Square

(j) Hampton Inn Manhattan/Times Square South

(k) Hampton Inn Seaport

(l) Hampton Inn Manhattan – Madison Square Garden

(m) Hampton Inn Manhattan – Chelsea

(n) Candlewood Suites New York City – Times Square

(o) Hotel 48Lex New York

11.    Hersha Hospitality Management, L.P. is named as Plaintiff's employer of record on the paystub Plaintiff received for his work at the Moxy NYC Downtown hotel. *See* **Exhibit B**.

12.     Hersha Hospitality Management, L.P. is organized under the laws of the State of Pennsylvania and has principal places of business at 510 Walnut Street, 9th Floor, Philadelphia, PA 19106, and 44 Hersha Drive, Harrisburg, PA 17102.

13.     Individual Defendant Demetrius Hodge is the General Manager of the Moxy NYC Downtown hotel. As detailed below, Defendant Hodge was involved in the decision to terminate Plaintiff on the basis of Corporate Defendants' policies. Defendant Hodge's name is listed on Plaintiff's background report as the individual who ordered it.

## STATEMENT OF FACTS

14.     Plaintiff has a conviction history.

15.     Sometime in December 2021, Plaintiff filled out an online application to work as a bellperson at the Moxy NYC Downtown hotel, located at 26 Ann St., New York, NY 10038 ("Moxy").

16.     About a week after Plaintiff filled out the application, Plaintiff received a call from Moxy inviting him to come interview.

17.     Plaintiff came in for the interview and was hired.

18.     Plaintiff began working at Moxy around the beginning of January.

19.     About a week into his employment, Plaintiff arrived at work and was greeted by a co-worker who told him, "I heard you quit. What are you doing here?" This struck Plaintiff as very strange, since he had not in fact quit. Later that day when Plaintiff was eating in the lunch room, Defendant Demetrius Hodge, the General Manager of the Moxy, told him, "I need to talk to you after you finished eating." Once he finished eating, Plaintiff went to see Defendant

Hodge, who was then busy with a call and told Plaintiff that they would speak the next day instead.

20.    Plaintiff arrived at work the next day to discover that another bellperson had been assigned to his duties. Defendant Hodge then told him, "Sorry, we found out that you have a criminal background, so we're going to let you go."

21.    At around the same time, Plaintiff received from Defendants an "Adverse Action Notice," dated January 12, 2022. This letter stated that "we find it necessary to rescind our previous offer of employment" and that "[t]his decision was based in whole or part, on the information provided to us in a Consumer Report or Investigative Consumer Report." The letter also stated that "[t]he report was prepared pursuant to an authorization signed by you at the time of application." *See* **Exhibit A**.

22.    While Defendant Hodge informed Plaintiff that he was being terminated because of his conviction history, none of the Defendants provided Plaintiff with a more detailed explanation of why exactly his conviction disqualified him from serving as a bellperson at the Moxy.

23.    While Defendants did send Plaintiff a copy of his background check, they did not provide him with a copy of Article 23-A, detailing the circumstances under which an employer may reject an applicant on the basis of a conviction history.

## LEGAL ANALYSIS

### *The Fair Chance Act (New York City Human Rights Law)*

24.    New York City has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced

against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101. Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate New York City's clearly articulated policy. Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

25.     Accordingly, New York City amended its Human Rights Law ("NYCHRL") on October 27, 2015, with the Fair Chance Act, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment." *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 1 (2015). *See also* NYC Administrative Code 8-107(11-a)(a)(1)(3).

26.     Beyond prohibiting premature inquiries into criminal records, the Fair Chance Act also makes it an unlawful discriminatory practice for an employer to "[d]eclare, print or circulate or cause to be declared, printed or circulated any solicitation, advertisement or publication, which expresses, directly or indirectly, any limitation, or specification in employment based on a person's arrest or criminal conviction." NYC Administrative Code 8-107(11-a)(a)(1).

27.     The Fair Chance Act specifies the following procedures for inquiring into criminal backgrounds, any deviation from which is unlawful:

> (b) After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof
>
> > (i) provides a written copy of the inquiry to the applicant in a

manner to be determined by the commission;

(ii) performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and

(iii) after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

28.     The Article 23-A requirements referenced by and incorporated into the Fair Chance Act prohibit employers from denying employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" employers can show either "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

29.     To determine whether such a direct relationship and unreasonable risk exist, Article 23-A requires employers to consider the following eight factors before taking any adverse action on the basis of a job applicant's criminal record:

(a)   The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b)   The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c)   The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d)  The time which has elapsed since the occurrence of the criminal offense or offenses.

(e)  The age of the person at the time of occurrence of the criminal offense or offenses.

(f)  The seriousness of the offense or offenses.

(g)  Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h)  The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

30.     Employers may not deny employment to applicants without first justifying such a decision on the basis of these factors and then giving applicants an opportunity to respond to this analysis. Under (g), prospective employers must also allow applicants to submit evidence of rehabilitation and good conduct to be considered in the analysis.

31.     Furthermore, an employer's perception that an applicant has misrepresented his or her conviction history does not give the employer carte blanche to summarily reject the applicant on those grounds, as this situation is subject to its own Fair Chance Act procedures:

> Before disqualifying an applicant based on a perceived intentional misrepresentation, the employer is required to provide the applicant with a copy of any information that led the employer to believe that the applicant intentionally misrepresented their criminal record and afford the applicant a reasonable period of at least five business days to respond. If the applicant credibly demonstrates either that the information provided was not a misrepresentation or that a misrepresentation was unintentional, the employer is required to perform the Fair Chance Analysis before taking adverse action against the applicant.

*NYC Commission on Human Rights Legal Enforcement on the Fair Chance Act and Employment Discrimination on the Basis of Criminal History, Revised July 15, 2021 at 19.*

32.     NYCHRL defines the employer-employee relationship expansively, since "natural persons employed as independent contractors to carry out work in furtherance of an employer's business enterprise who are not themselves employers shall be counted as persons in the employ of such employer." N.Y.C. Admin Code § 8-102(5).

33.     NYCHRL also provides that it shall be an unlawful discriminatory or retaliatory practice "[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin Code § 8-107(6).

34.     Defendants violated the Fair Chance Act by initiating a background check on Plaintiff before making him a conditional offer of employment. The Adverse Action Notice that Plaintiff received stated that Plaintiff had provided Defendants with authorization for a background check when he filled out his application. Plaintiff does not recall providing such authorization.  But even if Defendants were correct, that meant they raised the issue of Plaintiff's conviction history before extending him a conditional offer of employment, in violation of the Fair Chance Act.

35.     While Defendants later hired Plaintiff, Plaintiff was injured by Defendants as soon as Defendants asked about or inquired into his conviction history.  Plaintiff accrued a cause of action already at this juncture irrespective of what Defendants then proceeded to do:

> Donatella argues that the amendment is nonetheless devoid of merit because Harding did not suffer an injury as a result of Donatella's hiring practices. This court disagrees. The Fair Chance Act — in effect at the time — plainly provides that such a pre-offer inquiry regarding criminal history is an unlawful discriminatory practice. (*See* Local Law No. 63 (2015) of the City of New York § 2.) The New York City Administrative Code provides that a person aggrieved by an unlawful discriminatory practice may bring a cause of action for damages (including punitive damages), injunctive relief, or other appropriate remedies. (*See* Administrative Code §§ 8-107 (11-a) (g) and 8-502.) And a person may be aggrieved for purposes of § 8-107 (11-a) even if their only injury was the deprivation of a right protected by the Code. (*See* Administrative Code § 8-102 [definition of "Person aggrieved"].)

10

CARMELA HARDING, Plaintiff, - v - DONATELLA GCT LLC, DONATELLA ARPAIA, MARK GERAGOS, Defendant., 2019 N.Y. Misc. LEXIS 1675, *3-4.

36.     Moreover, Defendants violated the Fair Chance Act again with their January 12, 2022 Adverse Action Notice, as New York City employers may not deny employment on the basis of a criminal history without first providing an applicant with (1) their Article 23-A analysis and (2) an invitation to respond to it within a reasonable time.  At no point did Defendants provide this.

37.     Had Defendants followed the procedures set forth by the Fair Chance Act, Plaintiff Sanchez would have had an opportunity to present evidence of his good conduct and rehabilitation to offset the negative inferences Defendants drew from his conviction history. The Fair Chance Act Notice that Defendants should have provided Plaintiff would have apprised him of the precise nature of their concerns, allowing him to respond directly and allay these.  *See* **Exhibit C**.

38.     Facilitating dialogue between prospective employers and applicants with conviction histories is among the primary purposes of the Fair Chance Act:

> By giving an applicant at least three business days to respond, the FCA contemplates a process in which employers discuss their reasons for finding that an applicant's record poses a direct relationship or unreasonable risk. The process allows an applicant to respond either orally or in writing and provide additional information relevant to any of the Article 23-A factors. After receiving additional information from an applicant, an employer must examine whether it changes its Article 23-A analysis. Employers may offer an applicant a similar position that mitigates the employer's concerns.

*NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 9-10 (2015)[1]

> The FCA reflects the City's view that job seekers must be judged on their merits before their mistakes. The FCA is intended to level the playing field so that New

---

[1] https://www1.nyc.gov/assets/cchr/downloads/pdf/FCA-InterpretiveGuide-052419.pdf

Yorkers who are part of the approximately 70 million adults residing in the United States who have been arrested or convicted of a crime "can be considered for a position among other equally qualified candidates," and "not overlooked during the hiring process simply because they have to check a box."

..............

While the FCA does not require employers to hire candidates whose convictions are directly related to a job or pose an unreasonable risk, it ensures that individuals with criminal histories are considered based on their qualifications before their conviction histories. If an employer is interested enough to offer someone a job, it can more carefully consider whether or not that person's criminal history makes her or him unsuitable for the position. If the employer wishes to nevertheless withdraw its offer, it must first give the applicant a meaningful opportunity to respond before finalizing its decision.

*NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) Revised 06/24/2016 at 1-2.*

39.     Far from receiving this meaningful opportunity, Plaintiff learned of his termination only indirectly, first through false rumors that he had decided to quit and then by discovering that his position had been filled by another.

40.     Had Plaintiff received this opportunity and been allowed to engage in a dialogue about his conviction history, he would not have been terminated, because (a) Plaintiff could have submitted evidence of his rehabilitation and good conduct since his conviction[2] and (b) there was no good reason why he could not serve as a bellperson at the Moxy.  Indeed, Plaintiff had already been doing just that for a week when his offer of employment was rescinded, and there were no complaints.

---

[2] *See Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 319 (2011) ("The Correction Law requires the DOE to 'consider' '[a]ny information produced by the person, or produced on his [or her] behalf, in regard to his [or her] rehabilitation and good conduct' in determining whether the 'unreasonable risk' exception applies to an application (Correction Law § 753 [1] [g])."); *Matter of Tinsley v Taxi & Limousine Commn.*, 62 N.Y.S.3d 769, 770 (2017) ("Under the relevant law, as interpreted by the Court of Appeals, the petitioner was entitled to a full and fair opportunity to present evidence at the hearing."); *Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 316 (2011) ("A failure to take into consideration each of these [Article 23-A] factors results in a failure to comply with the Correction Law's mandatory directive.")

41.     Defendants' failure to implement the fair review required under law led to Plaintiff's unemployment and loss of wages and compensation. Plaintiff suffered harm because he would have remained gainfully employed by Defendants but for Defendants' unlawful acts.

42.     Other Class members suffered similar harms. It is Defendants' general policy to (a) inquire into conviction histories before making conditional offers of employment and (b) reject applicants or terminate employees on the basis of their conviction histories without undertaking an Article 23-A analysis and then allowing the subject of the adverse action to read and respond to that analysis.

43.      Defendants have acted consciously in breaching their known duties and depriving Plaintiff and other Class member job applicants of their rights under the NYCHRL.

44.     The ability to find employment is an essential aspect of reentering society for people with criminal histories. Recidivism declines when those individuals have viable employment prospects and other stabilizing resources in their communities. Defendants' policy of discriminating against individuals with criminal records frustrates such public policy objectives.

45.     This violation led to immediate loss of income for many Class members, as many individuals with criminal records would not even apply once confronted with this requirement.

46.     Each Defendant violated NYCHRL either as Plaintiff's prospective employer, as Plaintiff's prospective joint employer, or by aiding, abetting, inciting, compelling, or coercing Plaintiff's prospective employer to violate NYCHRL, in violation of N.Y.C. Admin Code § 8-107(6).

47.     Hersha Hospitality Management, L.P. is clearly liable because it is the employer of record on Plaintiff's paystubs and because it describes itself as the operator of the Moxy NYC Downtown hotel.[3]

48.     Hersha Hospitality Trust is clearly liable because it sent the adverse action notice to Plaintiff.

49.     Individual Defendant Demetrius Hodge is clearly liable because he aided and abetted both Hersha entities in their violations of the Fair Chance Act.

### New York Fair Credit Reporting Act (NY FCRA)

50.     The NY FCRA requires that:

> When a consumer reporting agency provides a consumer report that contains criminal conviction information, permitted by paragraph one of subdivision (a) of section three hundred eighty-j of this article, to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

 N.Y. Gen. Bus. Law § 380-g(d).

51.     Defendants violated the NY FCRA when they relied on a consumer report without providing Plaintiff Sanchez with a printed or electronic copy of Article 23-A (discussed above).

---

[3] Hersha Hospitality Management's website states, "The Moxy NYC Downtown located just steps away from the World Trade Center is HHM's first Marriott-branded hotel in NYC, and first Moxy to join the HHM portfolio."  https://www.hhmhospitality.com/hotels/moxy-nyc-downtown.

52. Defendants have routinely and systematically failed to provide other job applicant Class members with a copy of Article 23-A of the Correction Law after a consumer report was ordered on them.

53. This has caused Plaintiff and other job applicants concrete harm because it has denied them an opportunity to learn of their rights under Article 23-A of the Correction Law and created the risk of future harm.

54. Defendants' failure to provide Plaintiff and other job applicants with a copy of Article 23-A of the Correction law denied them information about their legal right to be free from discrimination and about their remedies for that discrimination once it had occurred.

55. Had Plaintiff received a copy of Article 23-A before Defendants took adverse action against him, he would have learned that Defendants could not deny him employment on the basis of his criminal history except insofar as the denial was supported by the factors enumerated in Article 23-A. Had he known this, he could have challenged Defendants to explain their decision to terminate him and provided Defendants with evidence of his own rehabilitation, thereby persuading Defendants of his suitability as an employee. But this was impossible in light of Defendants' policies, since Plaintiff had already been replaced by another worker by the time he learned that he had been terminated on the basis of his conviction history.

56. Plaintiff suffered harm from lost wages and benefits due to his unemployment caused by Defendants' failure to hire him.

57. Defendants' violation of the NY FCRA frustrates New York's public policy of increasing the employment prospects of persons with criminal convictions. *See* N.Y. Corr. Law § 753(1)(a).

58.     The harms suffered by Plaintiff and other job applicants are the precise harms that the New York Legislature enacted section 380-g to prevent. *See* L. 2008, c. 465, § 2, eff. Feb. 1, 2009 (enactment of provision was to "ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law" because that information "will help to avoid illegal discrimination against persons with a criminal conviction").

## CLASS ACTION ALLEGATIONS

59.     Plaintiff Sanchez brings this case as a proposed Class action pursuant to Federal Rule of Civil Procedure 23 ("Rule") on behalf of himself each of the following two classes of persons (collectively, the "Classes"):

60.     **The NYCHRL Class**, defined as:

All individuals with criminal records who, during the applicable limitations period, applied for employment at any New York City hotel that is owned by Hersha Hospitality Trust and/or operated by Hersha Hospitality Management, L.P. and were either denied employment or terminated after Defendants conducted a background check or otherwise inquired into their criminal history, without first receiving (a) a conditional offer of employment and/or (b) Defendants' Article 23-A analysis and a reasonable opportunity to respond to it.

61.     The **NY FCRA** Class, defined as:

All individuals with criminal records who, during the applicable limitations period, applied for employment at any New York City hotel that is owned by Hersha Hospitality Trust and/or operated by Hersha Hospitality Management, L.P. and (a) were denied employment or terminated by Defendants, (b) had consumer reports requested about them by Defendants, and (3) were not provided with a copy of Article 23-A of the Correction Law.

62.     These two classes are collectively referred to as "the Classes." Members of one or both of the Classes are collectively referred to as "Class members."

63.     Plaintiff reserves the right to amend the foregoing class definitions based on information learned in the course of litigating this case.

64.     Class members are so numerous that joinder of all members is impracticable. The precise number of Class members is information uniquely within Defendants' possession, and Class members may be notified of the pendency of this action by published and/or mailed notice.

65.     There are questions of law and fact common to Class members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include but are not limited to:

    (a)     whether Defendants violated the NYCHRL by undertaking a background check on Plaintiff and the NYCHRL Class, or otherwise inquiring about their criminal history, before extending to them a conditional offer of employment;

    (b)     whether Defendants violated the NYCHRL by taking adverse action against Plaintiff and the NYCHRL Class without first providing them with an Article 23-A analysis and a reasonable period of time to respond to it;

    (c)     whether Defendants violated the NY FCRA by failing to provide Plaintiff and the NY FCRA Class with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d);

    (d)     whether Defendants were willful in their noncompliance with the requirements of the NYCHRL and NY FCRA;

    (e)     whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class members are warranted; and

    (f)     whether a declaratory judgement and/or injunctive relief is warranted to prohibit Defendants' unlawful policies and practices.

66.     Plaintiff's claims are typical of the claims of the Classes. Plaintiff's experience indicates that it is Defendants' standard practice to take adverse actions against applicants

without properly considering the factors laid out in the Correction Law, following the procedures laid out in the NYCHRL as amended by the Fair Chance Act, or providing job applicants with the documents required under the NY FCRA. Plaintiff is entitled to relief under the same causes of action as other Class members.

67.     Plaintiff will fairly and adequately represent and protect the interests of Class members because his interests coincide with, and are not antagonistic to, those interests. Plaintiff has retained Counsel who are competent and experienced in complex class actions. There is no conflict between Plaintiff and Class members.

68.     Class certification is appropriate under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole. Class members are entitled to declaratory and injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

69.     Class certification is also appropriate under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class members.

70.     Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices. The amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. A class action will allow more individuals to obtain relief, given the high cost of bringing individual actions, while also saving judicial resources.

## CAUSES OF ACTION

### FIRST COUNT

### VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
### (N.Y.C. Admin. Code. § 8-101 *et seq.*, § 8-107(11-a)(b)(i)-(iii))

### *Brought by Plaintiff on Behalf of Himself and the NYCHRL Class*

71.     Plaintiff, on behalf of himself and the NYCHRL Class, incorporates all the preceding paragraphs of this Complaint as if fully alleged herein and further alleges as follows:

72.     Defendants took adverse action against Plaintiff and the NYCHRL Class based in whole or in part on the criminal history information contained within their consumer reports.

73.     Defendants violated the NYCHRL when they undertook background checks on Plaintiff and the NYCHRL Class before extending to them a conditional offer of employment.

74.     Defendant further violated the NYCHRL when they took adverse action against Plaintiff and the NYCHRL Class without:

   a.   providing Class members a written copy of their Article 23-A analyses, as required by N.Y.C. Admin Code § 8-107(11-a)(b)(ii); and

   b.   allowing Class members a reasonable amount of time, not less than three days, to respond to the Article 23-A analysis, and holding the job open during that time, as required by N.Y.C. Admin Code § 8-107(11-a)(b)(iii).

75.     Each of these failures by Defendants establishes a separate cause of action and injured Plaintiff and the NYCHRL Class.

76.     As a result of Defendants' unlawful conduct, Plaintiff and the NYCHRL Class have lost employment opportunities, earnings and other employment benefits.

77.     In addition to damages, Plaintiff and the NYCHRL Class seek (a) an injunction compelling Defendants to comply with the procedures specified by the Fair Chance Act and (b)

declaratory relief to the effect that Defendants' discriminatory policies and practices are unlawful.

## SECOND COUNT

### VIOLATIONS OF NEW YORK FAIR CREDIT REPORTING ACT
### (N.Y. Gen. Bus. Law § 380-g(d))

#### *Brought by Plaintiff on Behalf of Himself and the NY FCRA Class*

78.     Plaintiff, on behalf of himself and the NY FCRA Class, incorporates all the preceding paragraphs of this Complaint as if fully alleged herein and further alleges as follows:

79.     Defendants violated the NY FCRA by procuring consumer reports from Plaintiff and the NY FCRA Class without providing them with copies of Article 23-A of the Correction Law.

80.     Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the NY FCRA Class because the latter were deprived of a resource through which to advocate for their rights under Article 23-A and challenge Defendant's adverse action against them.

81.     Defendants acted willfully and in knowing or reckless disregard of their legal obligations to Plaintiff and the NY FCRA Class.

82.     Defendants' willful conduct is reflected by, among other things, the fact that they violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

83.     As a result of Defendants' actions, Plaintiff and the NY FCRA Class have been deprived of their rights, prevented from timely and effectively contesting the adverse action taken against them.

84.     Defendants' willful and/or negligent conduct makes them liable for actual damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l and N.Y. Gen. Bus. Law § 380-m.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class members pray for relief as follows:

(a)     Certification of this action as a class action on behalf of the proposed Classes;

(b)     Designation of Plaintiff Sanchez as representative of both Classes;

(c)     Designation of Plaintiff's counsel of record as Class Counsel for both Classes;

(d)     Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

(e)     An award of all applicable compensatory and statutory damages for violations of NYCHRL and NY FCRA;

(f)     An award of all applicable punitive damages for all violations of NYCHRL and NY FCRA found to be willful;

(g)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h)     Pre-judgment and post-judgment interest, as provided by law;

(i)     Payment of a reasonable service award to Plaintiff Sanchez, in recognition of the services he has rendered and will continue to render to Class members, and the risks he has taken and will take; and

(j)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: March 1, 2022

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Classes*